UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MOOSTAFA YOSEF BEY,

                                    Plaintiff,

          v.

ROCHDALE VILLAGE, INC.,

                                  Defendant.

**MEMORANDUM AND ORDER**

19-CV-0497 (LDH) (SMG)

---

LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Moostafa Yosef Bey, proceeding pro se, brings the instant action against Defendant Rochdale Village Inc. pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") for employment discrimination based on religion and national origin. Defendant moves pursuant to the Federal Arbitration Act (the "FAA") to compel arbitration and stay the action, or alternatively, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[1]

Plaintiff identifies as an "Indigenous American" and a "Messianic Jew." (Am. Compl. at 5, ECF No. 13.) Defendant is a domestic business corporation that manages a New York State Mitchell-Lama housing cooperative in Jamaica, Queens, New York. (Defs.' Mem. L. Supp. Mot. Dismiss ("Def.'s Mem.") 4, ECF No. 29.) On August 25, 2008, Plaintiff was hired as a patrol officer in Defendant's Public Safety Department. (*Id.*) During his employment, Plaintiff

---

[1] Unless otherwise noted, the following facts are taking from the complaint and are assumed to be true for the purpose of this memorandum and order. The Court also considers the collective bargaining agreement (the "Agreement") incorporated by referenced in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("For purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam)).

1

was represented by Special and Superior Officers Benevolent Association ("the Union"), a labor union. (*Id*. at 4.)

On April 1, 2014, Defendant and the Union entered into a collective bargaining agreement (the "Agreement"). (*See* Dec. 11, 2019 Decl. of Jay Williams ("Williams Decl."), Ex. A, ECF No. 28-1.) The Agreement recognizes the Union as the "exclusive representative for the purpose of collective bargaining with respect to rates of pay wages, hours of employment and other conditions of employment for all full-time and regular part-time unarmed security officers employed at the [] [Rochdale]'s Jamaica, New York facility." (*Id*. at 3.) The Agreement further provides for a three-step grievance procedure, defining a grievance as "any dispute arising during the term of this Agreement between an employee or the Union and the Employer, concerning the interpretation or application of the specific provisions of this Agreement."[2] (*Id*. at 12–13.) Of particular relevance here, Article XVI, Paragraph 16.6 of the Agreement provides:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership or any characteristic protected by law, including, but not limited to, claims made pursuant to the Title VII of the Civil Rights Act . . . . All such claims shall be subject to the grievance and arbitration procedure as the sole and exclusive remedy for violations . . . .

(*Id*. at 13–14.) The Agreement also contains arbitration provisions. (*See id*. at 14.) Specifically, Article XVII, Paragraph 17.1 provides:

---

[2] "[Step 1] Grievances shall be presented within ten (10) days of the incident complained of by the employee or his or her Union representative to the employee's immediate supervisor." (Williams Decl., Ex. A. at 13.) "[Step 2] If the grievance is not settled in Step I, and the affected employee seeks to appeal, then the grievance shall be reduced to writing, signed by the grievant and his or her Union representative and presented to the Chief of Security or his or her designee within seven (7) days after the last date for an answer in Step I." (*Id*.) "A grievance so presented in Step 2 shall be answered by the Employer in writing within seven (7) days after its presentation." (*Id*.) "[Step 3] If the grievance is not settled in Step 2 and the Union decides to appeal, then the grievance shall be presented within seven (7) days after the last date for an answer in Step 2 to the Personnel Director of the Employer, or his or her designee." (*Id*.) "The Personnel Director of his or her designee shall hold a hearing on the grievance where the grievant and the Union shall be afforded an opportunity to be heard." (*Id*.) "The Employer shall render an answer in writing within seven (7) days after the conclusion of the hearing." (*Id*.)

> If a grievance has arisen during the term of this Agreement and has been timely presented pursuant to Article XVI of this Agreement, and has not been settled, then the Union may appeal the grievance to arbitration by delivering to the Employer within fourteen (14) days after the last date for the Employer's Step 3 answer, written notice of its intent to arbitrate the grievance. Disputes shall be referred for arbitration by the Union in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association then prevailing in the City of New York.

(*Id*. at 14.)

Plaintiff alleges that he was unlawfully terminated, discriminated against, and retaliated against by Defendant because of his Jewish faith and indigenous heritage. (*See* Am. Compl. at 3–4.) Specifically, on August 3, 2016, Plaintiff was written up by a supervisor who "demanded a report statement" about Plaintiff's religion. (*Id.* at 5.) Months later, a newly hired supervisor followed Plaintiff's vehicle into the city streets while off duty. (*Id*.) When Plaintiff complained about this supervisor, questions about Plaintiff's national origin began circulating, and Plaintiff was suspended. (*Id*.) In January 2018, questions about Plaintiff's national origin re-circulated. (*Id*.) In June 2018, Plaintiff was terminated for engaging in what he alleges to be a "known common practice." (*Id*. at 6.)

## DISCUSSION

The Court "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under [] an agreement [in writing for such arbitration]," shall upon application of one of the parties "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. Plaintiff opposes a stay in this action arguing that the claims are not arbitrable. (*See generally* Pl.'s Opp'n Def.'s Mot. Stay ("Pl.'s Opp'n"), ECF No. 31.) Typically, "the arbitrability of a given issue is a question for the court." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198–99 (2d Cir. 1996). However, where

3

there is "clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator," the arbitrator will decide. *Id.* (internal quotations omitted). Such is the case here.

Article XVII, Paragraph 17.1 of the Agreement provides that, for any unsettled grievances, "[d]isputes shall be referred for arbitration by the Union in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association [(the "AAA")] then prevailing in the City of New York." (Williams Decl., Ex. A at 14.) Rule 3 of the Voluntary Labor Arbitration Rules of the AAA provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA Vol. Labor Arb. R. 3(a) (available at https://www.adr.org/sites/default/files/Labor%20Rules.pdf). Read together, these terms clearly and unmistakably demonstrate an intent by the parties to arbitrate the arbitrability of Plaintiff's claims. *Morales v. Rochdale Vill. Inc.*, No. 15-CV-502 (RJD)(RML), 2017 WL 9250352, at *4 (E.D.N.Y. Aug. 16, 2017) (compelling arbitration where collective bargaining agreement incorporated the Voluntary Labor Arbitration Rules of the AAA); *Lapina v. Men Women N.Y. Model Mgmt.*, 86 F. Supp. 3d 277, 283–84 (S.D.N.Y. 2015) ("[A] party who signs a contract containing an arbitration clause and incorporating by reference the AAA rules . . . cannot [later] disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability." (internal quotations omitted))

Plaintiff seeks to avoid this conclusion by arguing that the language in Article XVII, Paragraph 17.1—"the Union *may* appeal the grievance to arbitration by delivering to the Employer within fourteen (14) days . . . written notice of its intent to arbitrate the grievance"— evinces that arbitration is optional, not mandatory. (Pl.'s Opp'n 1–2.) Plaintiff also argues that

4

arbitration is not appropriate because the Union failed to follow the three-step grievance procedure and otherwise waived its right to arbitration. (*Id*. 2.)  Plaintiff's arguments miss the mark.  Under the Voluntary Labor Arbitration Rules of the AAA, which were incorporated by reference into the Agreement, it is the purview of the arbitrator to resolve matters concerning the arbitrability of the claim, including procedural questions.  *See Morales*, 2017 WL 9250352 at *4 (holding that because the parties incorporated the AAA, the arbitrator "will [] decide any threshold, procedural questions, such as whether the employees must exhaust the three-step grievance process before their claims may be referred to arbitration").  Thus, whether arbitration is mandated or discretionary, and whether the Union waived arbitration or otherwise failed to abide by the conditions precedent to trigger arbitration, are matters that must be decided by the arbitrator.

     Even if the question of waiver is properly before the Court, it would not be decided in Plaintiff's favor.  In determining whether a waiver exists, the Court must consider:  "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice."  *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010).  There is no "rigid formula" or "bright-line rule" for identifying when a party has waived its right to arbitration; rather, "the above factors must be applied to the specific context of each particular case." *Id.* at 159.  In the context of this case, the factors counsel against finding any waiver.

     *First*, very little time elapsed from the date the litigation commenced to the date the request for arbitration was made.  Specifically, Defendant asserted arbitration as an affirmative defense in its June 14, 2019 answer to Plaintiff's May 29, 2019 amended complaint.  (Def.'s

Answer Am. Compl. ¶¶ 25–26, ECF No. 15.)  The case was referred to mediation on July 1, 2019, which lasted until October 21, 2019.  (July 1, 2019 Minute Entry, ECF No. 17.)  And, when the parties could not reach settlement on October 21, 2019, Defendant promptly filed a motion for a pre-motion conference on its motion to compel arbitration on October 28, 2019.  (ECF No. 22.)

*Second*, there has been minimal litigation to date, none of which has related to substantial issues going to the merits.  There has been no motion practice leading up to the instant motion, which was filed December 13, 2019.  (Def.'s Notice Mot., ECF No. 26).  A discovery order was entered in this case on November 13, 2019.  (*See* Nov. 13 Order.)  The docket reflects that no discovery was conducted between November 13, 2019 and the date the instant motion was filed.

*Third*, the Court can discern no prejudice.  "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991).  Neither scenario has occurred in this case—the parties have not litigated any issues beyond arbitrability and, Plaintiff produces no evidence that he has incurred any unnecessary legal expenses or will otherwise be prejudiced.  There has been no waiver of arbitration in this case.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration and stay this instant action is GRANTED.

|  |  |
|---|---|
|  | SO ORDERED. |
| Dated: Brooklyn, New York<br>November 19, 2020 | /s/ LDH<br>LaSHANN DeARCY HALL<br>United States District Judge |